United States Court of Appeals,

Eleventh Circuit.

No. 96-8147.

Doug TEPER, Louis Feingold, Alan Ulman, Plaintiffs-Appellees,

v.

Zell MILLER, in his official capacity as Governor of the State of
    Georgia, Michael Bowers, in his official capacity as Attorney
    General of the State of Georgia, Max Cleland, in his official
    capacity as Secretary of State of the State of Georgia, Steven
    Scheer, Steven White, Michael D. Mcrae, Brian Foster, in their
    official capacities as Members of the Georgia State Ethics
    Commission, Defendants-Appellants.

April 24, 1996.

Appeal from the United States District Court for the Northern
District of Georgia. (No. 1:96-CV-9-WBH), Willis B. Hunt, Jr.,
Judge.

Before KRAVITCH and CARNES, Circuit Judges, and HILL, Senior
Circuit Judge.

KRAVITCH, Circuit Judge:

Officials of the State of Georgia appeal the grant of a

preliminary injunction against enforcement of O.C.G.A. § 21-5-35 to

prohibit a member of the General Assembly from accepting

contributions for a campaign for federal office while the General

Assembly is in session. The court (Judge Hill dissenting) affirms

the district court's grant of the preliminary injunction,

concluding that the Georgia statute is preempted by the Federal

Election Campaign Act.

I.

Doug Teper is a member of the Georgia General Assembly who is

contemplating a campaign for federal office; Teper's co-plaintiffs

are potential contributors to his federal campaign. As a member of

the General Assembly, Teper is precluded by a provision of the

Georgia Ethics in Government Act, O.C.G.A. § 21-5-35, from accepting campaign contributions during any legislative session. The most recent session of the General Assembly began on January 8, 1996, and ran through the beginning of April.[1] Teper asserts that had he been barred from accepting contributions for his federal

---

[1]The General Assembly session ended after oral argument in this case but before this opinion had issued. Adjournment of the General Assembly session did not render the case moot, however. The Supreme Court has recognized that often in cases challenging rules governing elections there is not sufficient time between the filing of the complaint and the election to obtain judicial resolution of the controversy before the election. Consequently, the Court has allowed such challenges to proceed under the "capable of repetition yet evading review" exception to the mootness doctrine. *See Norman v. Reed,* 502 U.S. 279, 286-89, 112 S.Ct. 698, 704-05, 116 L.Ed.2d 711 (1992); *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 772-76, 98 S.Ct. 1407, 1414-15, 55 L.Ed.2d 707 (1978); *Moore v. Ogilvie,* 394 U.S. 814, 814-16, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); *see also American Civil Liberties Union v. Florida Bar,* 999 F.2d 1486, 1496-97 (11th Cir.1993).

This exception applies under two conditions: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam); *see also News-Journal Corp. v. Foxman,* 939 F.2d 1499, 1507 (11th Cir.1991). Application of the "capable of repetition yet avoiding review" exception is particularly appropriate in cases like Teper's presenting "as applied" challenges to state law, because "[t]he construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held." *Storer v. Brown,* 415 U.S. 724, 737-38, 94 S.Ct. 1274, 1282-83 n. 8, 39 L.Ed.2d 714 (1974). Given that our decision in this expedited appeal has come too late for the current legislative session, because Teper himself certainly could desire to accept campaign contributions during a future session, and in view of the importance of this issue and its possible bearing on other similarly situated state elected officeholders, this case is not mooted just because the General Assembly recently has adjourned.

campaign until the end of the session, he would have been seriously disadvantaged relative to other federal candidates who are not state officials. Indeed, he might have been faced with the dilemma of resigning from state office or foregoing his federal campaign.

Teper contends that § 21-5-35 is preempted by federal campaign finance laws, which place no such prohibition on the timing of campaign contributions. In particular, the Federal Election Campaign Act ("FECA"), 2 U.S.C. § 431 et seq., includes a preemption provision, which states that "[t]he provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office." 2 U.S.C. § 453.

On January 2, 1996, Teper filed a motion in district court requesting a preliminary injunction prohibiting Georgia state officials ("the State") from enforcing § 21-5-35 as it applies to candidates for federal office. The district court, after concluding that Teper had standing to challenge the state statute, determined that Teper had a substantial likelihood of success on the merits of his claim that § 21-5-35 was preempted by FECA and regulations promulgated by the Federal Election Commission ("FEC") under the Act.[2] Consequently, the district court preliminarily enjoined enforcement of § 21-5-35 as it relates to federal

---

[2]In addition to the winning preemption claim, Teper argued to the district court that enforcement of § 21-5-35 violated the First Amendment and the Equal Protection Clause. The district court did not reach these claims, and they are not before this court on appeal.

elections.[3]

## II.

The sole issue on appeal is whether Teper has a substantial likelihood of success on the merits of his claim that O.C.G.A. § 21-5-35 is preempted by FECA and FEC regulations. The district court, in granting Teper a preliminary injunction, concluded that O.C.G.A. § 21-5-35, as applied to federal candidates, falls within the scope of FECA's preemption provision. We review the ultimate decision of whether to grant a preliminary injunction for abuse of discretion, but we review *de novo* determinations of law made by the district court en route. *Haitian Refugee Ctr., Inc. v. Baker,* 953 F.2d 1498, 1505 (11th Cir.), *cert. denied,* 502 U.S. 1122, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992). The interpretation and application of a federal statute raises an issue of law, subject to plenary review. *See, e.g., United States v. McLeod,* 53 F.3d 322, 324 (11th Cir.1995).

Preemption doctrine is rooted in the Supremacy Clause and grows from the premise that when state law conflicts or interferes with federal law, state law must give way. *See, e.g., CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 662-64, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993); *Cipollone v. Liggett Group, Inc.,* 505 U.S.

---

[3]In order to warrant the grant of a preliminary injunction, a plaintiff has the burden of proving four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury in the injunction were not granted; (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *See, e.g., Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir.1994). The district court found that Teper had established the second, third, and fourth of these factors before proceeding to focus on the first.

504, 515-16, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Federalism concerns counsel that state law should not be found preempted unless that is "the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). "Clear and manifest" does not necessarily mean "express," however, and Congress's intent to preempt can be implied from the structure and purpose of a statute even if it is not unambiguously stated in the text. *Jones v. Rath Packing Co.,* 430 U.S. 519, 523-25, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

The Supreme Court has identified three categories of preemption: (1) "express," where Congress "define[s] explicitly the extent to which its enactments pre-empt state law," *English v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990); (2) "field," in which Congress regulates a field so pervasively, or federal law touches on a field implicating such a dominant federal interest, that an intent for federal law to occupy the field exclusively may be inferred; (3) "conflict," where state and federal law actually conflict, so that it is impossible for a party simultaneously to comply with both, or state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See English,* 496 U.S. at 78-80, 110 S.Ct. at 2275. Preemption of any type "fundamentally is a question of congressional intent." *Id.*

In order to decide the preemptive effect of FECA on O.C.G.A. § 21-5-35, we must juxtapose the state and federal laws, demarcate

their respective scopes, and evaluate the extent to which they are in tension.

O.C.G.A. § 21-5-35(a) provides, "No member of the General Assembly or that member's campaign committee or a public officer elected statewide or campaign committee of such public officer shall accept a contribution during a legislative session." A "contribution" is defined to include "a gift, subscription, membership, loan, forgiveness of debt, advance or deposit of money or anything of value conveyed or transferred for the purpose of influencing the nomination for election or election of any person for office." "Office" is understood to include federal offices.

The Attorney General of Georgia has described the purpose of the statute as follows:

> It is clear that the General Assembly intended O.C.G.A. § 21-5-35 to prevent even the appearance of impropriety by its members or certain state officers in accepting contributions during a period where legislation is pending and there could be a perception that any legislative action could be influenced by the giving of a campaign contribution. This strong statement by the General Assembly is consistent with its desire that public officials not be influenced in the performance of their duties by improper "political contributions." *See* O.C.G.A. § 16-10-2 (bribery prohibited); *see also State v. Agan,* 259 Ga. 541 [384 S.E.2d 863] (1989), *cert. denied,* 494 U.S. 1057 [110 S.Ct. 1526, 108 L.Ed.2d 765] (1990).

Op. Att'y Gen. U95-27. The State similarly describes § 21-5-35 as "regulat[ing] the actions of state officials in order to preserve the public's faith in the integrity of the political system." Br. of Appellants at 10. No one disputes that § 21-5-35 would have the effect of precluding members of the General Assembly from accepting contributions for federal campaigns while the Assembly is in session.

Nor does anyone dispute the well established "constitutional power of Congress to regulate federal elections." *Buckley v. Valeo,* 424 U.S. 1, 13, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976). The Federal Election Campaign Act of 1971 (as amended), 2 U.S.C. § 431 et seq., creates an intricate federal statutory scheme governing campaign contributions and expenditures related to federal elections.[4] Various FECA provisions detail the structure of political committees, impose reporting requirements, empower and design the FEC, place limitations on the amounts of campaign contributions and expenditures by individuals and corporations, and restrict the use of such funds.

FECA was amended in 1974 to include a preemption provision, which states that "[t]he provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provisions of state law with respect to election to Federal office." 2 U.S.C. § 453. The current § 453 replaced a prior provision that included a savings clause, expressly preserving state laws, except where compliance with state law would result in a violation of FECA or would prohibit conduct permitted by FECA. *See* Federal Election Campaign Act of 1971, Pub.L. No. 92-225, 1972 U.S.C.C.A.N. (86

---

[4]In *Buckley,* 424 U.S. 1, 96 S.Ct. 612, the Supreme Court upheld FECA's contribution limitations, record-keeping and disclosure requirements, and provisions for public financing of Presidential elections and conventions; however, the Court also held that certain expenditure limitations under the Act were in violation of the First Amendment and that the exercise of administrative and enforcement powers delegated to the FEC was unconstitutional because of the way the Committee members were appointed. FECA was amended in 1976 to reconstitute the FEC to allow it to exercise its full powers under the Act constitutionally. *See infra* note 7. Otherwise, *Buckley* 's effect on FECA is of no consequence for the present case.

Stat.) 23 (amended by Federal Election Campaign Act Amendments of 1974, Pub.L. No. 93-443, 1974 U.S.C.C.A.N. (88 Stat.) 1469). The House Committee that drafted the current provision intended "to make certain that the Federal law is construed to occupy the field with respect to elections to Federal office and that the Federal law will be the sole authority under which such elections will be regulated." H.R.Rep. No. 1239, 93d Cong., 2d Sess. 10 (1974).

"When Congress ... has included in the enacted legislation a provision explicitly addressing [preemption], and when that provision provides a "reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation." *Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2618 (citations omitted). The express language of the broadly worded FECA preemption provision, illuminated by the legislative history, may be sufficiently clear to preempt O.C.G.A. § 21-5-35, which could readily be understood as a "state law with respect to election to Federal office." Likewise, this court could determine that FECA has "occupied the field" of regulation of federal elections and that the Georgia statute has impermissibly strayed into this field.[5]

I have no doubt that the purpose of the state law is, as the Attorney General and State assert, to prevent the appearance of impropriety—bribery, to be precise—that may arise when state

---

[5]In this case, express preemption via the FECA preemption clause and field preemption are no different in practice. The FECA preemption clause means that FECA occupies the field "with respect to election to federal office." 2 U.S.C. § 453. The only real issue is the effective reach of this phrase.

legislators accept campaign contributions during the period of time when they are actually legislating. To be sure, the Georgia Ethics in Government Act is an admirable example of self-regulation by incumbent state legislators, and it is not specifically directed toward federal elections. Nonetheless, it is the *effect* of the state law that matters in determining preemption, not its intent or purpose. Under the Supremacy Clause, state law that in effect substantially impedes or frustrates federal regulation, or trespasses on a field occupied by federal law, must yield, no matter how admirable or unrelated the purpose of that law. *See Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 105, 112 S.Ct. 2374, 2387, 120 L.Ed.2d 73 ("In assessing the impact of a state law on the federal scheme, we have refused to rely solely on the legislature's professed purpose and have looked as well to the effects of the law."); *Felder v. Casey,* 487 U.S. 131, 138, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988) (" "[T]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' ") (quoting *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962)); *Napier v. Atlantic Coast Line R.R. Co.,* 272 U.S. 605, 612, 47 S.Ct. 207, 209-10, 71 L.Ed. 432 (1926) (preemption depends not on whether federal and state laws "are aimed at distinct and different evils" but whether they "operate upon the same object").

In this case, the effect of O.C.G.A. § 21-5-35 is to place a

limitation on Teper's fundraising for his federal campaign. It would be possible to conclude, therefore, that the state law operates "with respect to election to Federal office," and thus falls within FECA's express preemption provision, 2 U.S.C. § 453.[6] Other courts have found express FECA preemption of state laws that are no more, or not much more, intrusive of federal regulation. *See Bunning v. Commonwealth of Kentucky,* 42 F.3d 1008 (6th Cir.1994) (holding that § 453 preempts state law purporting to regulate poll conducted by U.S. Congressman's federal election committee to test the effectiveness of advertising conducted during a federal campaign); *Weber v. Heaney,* 995 F.2d 872, 875 (8th Cir.1993) (concluding that, "under every plausible reading of § 453," state law establishing system of public funding for U.S. Congressional candidates "falls squarely within the boundaries of the preempted domain"). And cases in which preemption was not found invariably involve state laws that are more tangential to the regulation of federal elections. *See Karl Rove & Co. v. Thornburgh,* 39 F.3d 1273 (5th Cir.1994) (federal candidate's personal, contractual liability for costs of direct mail fundraising services during his campaign not preempted); *Stern v. General Elec. Co.,* 924 F.2d 472 (2d Cir.1991) (state law claims of corporate waste based on corporation's contributions to federal political campaigns not preempted); *Reeder v. Kansas City Bd. of Police Comm'rs,* 733 F.2d 543 (8th Cir.1984) (ban on political contributions by city police department employees not preempted). I hesitate, however, to conclude summarily that the preemptive

---

[6]Indeed, this is Judge Carnes's conclusion.

scope of § 453 is so unambiguous as to evince a "clear and manifest purpose of Congress," *Rice,* 331 U.S. at 229, 67 S.Ct. at 1152, to encompass state laws such as § 21-5-35.  Because further, and more definitive, evidence of Congress's intent is provided by the FEC's interpretation of FECA—and because § 453 incorporates by reference "rules prescribed under" FECA—I think it appropriate to take the agency's view into account before finally resolving the issue.

The 1974 amendments to FECA created the FEC and "vest[ed] in it primary and substantial responsibility for administering and enforcing the Act," delegating to the agency "extensive rulemaking and adjudicative powers."  *Buckley,* 424 U.S. at 109, 96 S.Ct. at 677-78;  *see also FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37-38, 102 S.Ct. 38, 45, 70 L.Ed.2d 23 (1981).[7]  The FEC is authorized to prescribe rules and regulations to carry out the provisions of FEC, 2 U.S.C. § 438(a)(8), and to give, upon request, advisory opinions concerning the application of FECA, 2 U.S.C. §§ 437d(a)(7), 437f.  Exercising this delegated authority, the FEC has promulgated regulations and issued a number of advisory opinions interpreting and applying FECA to determine its preemptive effect on state law.  With respect to the type of regulation imposed by O.C.G.A. § 21-5-35, the FEC's interpretation of FECA is unambiguous:  such state laws are preempted.

---

[7]In response to *Buckley,* the 1976 amendments to FECA reconstituted the FEC to allow the agency constitutionally to exercise its delegated duties and powers under the Act.  *See* S.Rep. No. 677, 94th Cong., 2d Sess. 1, 1-4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 929, 929-32.  The FEC was restructured as an independent executive branch agency, comprised of six commissioners to be appointed by the President with the advice and consent of the Senate.  No more than three of the commissioners may be affiliated with the same political party.

A 1977 FEC regulation specifies that "Federal law supersedes state law concerning ... [l]imitation on contributions and expenditures regarding Federal candidates and political committees." 11 C.F.R. § 108.7(b)(3). Interpreting this regulation, the district court plausibly determined that, according to the terms of the regulation, O.C.G.A. § 21-5-35 would be preempted, for "[a] restriction on when a potential candidate may accept contributions is simply another type of limitation." The regulation also enumerates the following areas in which state law is not preempted: "(1) [m]anner of qualifying as a candidate or political party organization; (2) [d]ates and places of election; (3) [v]oter registration; (4) [p]rohibition of false registration, voting fraud, theft of ballots, and similar offenses; or (4) [c]andidate's personal financial disclosure." 11 C.F.R. § 108.7(c). Although, as the State emphasizes, the regulation allows states to legislate "[p]rohibition[s] of false registration, voting fraud, theft of ballots, and similar offenses," § 21-5-35 is not about *voting* fraud. The Georgia statute operates against fraud at the level of governance, as in bribery of a state legislator through campaign donations, not at the level of registering to vote and casting ballots (which the state is free to regulate). Thus, I am inclined to agree with the district court that the gloss this FEC regulation places on the FECA preemption provision could be a sufficient basis for inferring Congress's intent to preempt the Georgia law.[8]

---

[8]FECA details the requisite procedures FEC must follow in prescribing regulations. The FEC must submit a proposed regulation and an accompanying statement to both the House and

Any residual ambiguity as to the FEC's understanding of the preemptive effect of FECA on the Georgia statute is conclusively resolved by FEC advisory opinions. The FEC consistently has expressed the opinion that FECA preempts state statutes limiting the time frame during which federal candidates may accept campaign contributions. *See* Op. FEC 1994-2 (advising that FECA preempts a Minnesota statute barring lobbyists from contributing to a candidate during a regular session of the state legislature); Op. FEC 1993-25 (advising that FECA preempts a Wisconsin statute restricting the time period during which lobbyists can contribute to candidates); Op. FEC 1992-43 (advising that FECA preempts a Washington statute barring state officials from accepting campaign contributions during legislative sessions). In fact, Teper himself wrote to the FEC in November 1995 requesting an advisory opinion on the constitutionality of O.C.G.A. § 21-5-43. In a reply letter dated December 5, 1995, the Associate General Counsel of the FEC wrote that a formal advisory opinion was unnecessary because FEC regulations and previous advisory opinions made clear that the Georgia law was preempted. Subsequently, after the district court's decision in this case, the FEC did address § 21-5-35 in a formal advisory opinion,[9] reiterating that the Georgia statute was preempted by FECA. *See* Op. FEC 1995-48. The advisory opinion

the Senate; if neither disapproves the proposed regulation within thirty days, the FEC may issue it. 2 U.S.C. § 438(d). We note that Congress has seen and not disapproved 11 C.F.R. § 108.7, thus suggesting that the regulation is not inconsistent with Congressional intent. *See Weber,* 995 F.2d at 876-77.

[9]This formal opinion was issued in response to an inquiry by another, more persistent, member of the Georgia General Assembly running for Congress.

noted the district court decision in this case and concluded, "Under the broad preemptive powers of [FECA], only Federal law could limit the time during which a contribution may be made to the Federal election campaign of a State legislator." *Id.*

Thus, even if the FECA preemption provision is not sufficiently determinate on its face to preempt O.C.G.A. § 21-5-35, the FEC's unambiguous understanding is that FECA preempts the state statute. The pressing question at this point, therefore, is to what extent this court should defer to the FEC's interpretation of FECA. Although this court could, of course, accept the FEC's interpretation simply as persuasive authority, in fact I believe that we are obliged to take the FEC's interpretation as more than merely convincing.

The Supreme Court has instructed, "When Congress, through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policy-making authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited." *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991). This language reflects the general principle established in the landmark case of *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), that if a statute is "silent or ambiguous with respect to the specific issue" in question, courts should accept "reasonable" administrative interpretations. *See id.* at 843-44, 104 S.Ct. at 2782.

The FEC, in particular, is "precisely the type of agency to

which deference should presumptively be afforded." *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. at 37, 102 S.Ct. at 45; *see also Orloski v. FEC,* 795 F.2d 156, 164 (D.C.Cir.1986) (allowing the FEC's interpretation of FECA "considerable deference"). This is not only because of the extensive responsibility and discretion in administering FECA expressly vested in the FEC by Congress, but also in light of the fact that "the Commission is inherently bipartisan ... and it must decide issues charged with the dynamics of party politics, often under the pressure of an impending election." *Id.; see also Common Cause v. FEC,* 842 F.2d 436, 448 (D.C.Cir.1988) (judicial deference particularly appropriate in the context of FECA, which explicitly relies on the bipartisan Commission as its primary enforcer). Deference to FEC interpretations of FECA is appropriate not only for rules but also for advisory opinions, given the FEC's express statutory responsibility for issuing advisory opinions concerning the application of FECA. 2 U.S.C. §§ 437d, 437f. *See FEC v. Colorado Republican Fed. Campaign Comm.,* 59 F.3d 1015, 1021 (10th Cir.1995) (deferring to FEC interpretive advisory opinions), *cert. granted,* --- U.S. ----, 116 S.Ct. 689, 133 L.Ed.2d 594 (1996); *FEC v. Ted Haley Congressional Comm.,* 852 F.2d 1111, 1115 (9th Cir.1988) (FEC interpretation of FECA through regulations and advisory opinions "entitled to due deference and is to be accepted by the court unless demonstrably irrational or clearly contrary to the plain meaning of the statute"); *Orloski,* 795 F.2d at 164 (FEC interpretation of FECA should be given deference because FEC's statutory responsibility to issue advisory opinions "implies that

Congress intended the Commission to fill in gaps left in the statute and to resolve any ambiguities in the statutory language").[10]

There is, however, one further twist to *Chevron* deference: it may not be obvious that this court's obligation to defer to FEC interpretations of FECA attaches even when those interpretations address the scope of preemption of state law by federal regulation. I recognize that the law may be unsettled in general as to the application of *Chevron* to an agency's determination of its own jurisdiction. *See generally* Cass R. Sunstein, Law and Administration After Chevron, 90 Colum.L.Rev. 2071, 2097–2101 (1990). Indeed, there is an inherent tension between *Chevron* deference, which only obtains where a statute is "silent or ambiguous," *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, and preemption doctrine, which maintains that state law will not be preempted unless that is "the clear and manifest purpose of Congress," *Rice,* 331 U.S. at 230, 67 S.Ct. at 1152. So, to say that a court should defer to an agency's determination that state law is preempted is seemingly paradoxical: the agency would command deference under *Chevron* only if the federal statute were ambiguous; but if the federal statute were ambiguous, then

---

[10]The fact that the multiple FEC advisory opinions interpreting FECA to preempt state regulations of the timing of campaign contributions have been consistent further militates in favor of deference. *See, e.g., Wagner Seed Co. v. Bush,* 946 F.2d 918, 921-22 (D.C.Cir.1991) (in the course of concluding that EPA interpretation issued via decision letter entitled to deference, noting that interpretation was given "in order to resolve an important and recurring matter before it," and that "agency has applied this interpretation consistently"), *cert. denied,* 503 U.S. 970, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992).

Congress's intent to preempt seemingly would not be "clear and manifest." Furthermore, although separation of powers (or institutional competence) concerns might counsel in favor of courts' deferring to agencies in the resolution of ambiguous questions of statutory interpretation,[11] countervailing federalism concerns offset this rationale for *Chevron* deference in preemption cases. Although federal agencies are more democratically accountable than courts, state legislatures are arguably yet more politically accountable. In the abstract, then, it is not at all clear that a state's view that a federal statute does not preempt state law should give way to a federal agency's view that the statute does preempt.

Fortunately, I need not completely untangle this knotty issue of jurisprudence in order to conclude that the FEC's interpretation of FECA is entitled to deference in this case. In *City of New York*

---

[11]The *Chevron* Court articulated this rationale in passages such as this:

> Judges are not experts in the field, and are not part of either political branch of the Government....
>
> When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests such responsibilities in the political branches." *TVA v. Hill,* [437 U.S. 153, 195] 98 S.Ct. 2279, 2302 [57 L.Ed.2d 117] (1978).

467 U.S. at 866, 104 S.Ct. at 2793.

*v. FCC,* a unanimous Court clarified the law sufficiently to settle the issue before us:

[17, 18] It has long been recognized that many of the responsibilities conferred on federal agencies involve a broad grant of authority to reconcile conflicting policies. Where this is true, the Court has cautioned that even in the area of pre-emption, if the agency's choice to pre-empt "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

486 U.S. 57, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988) (quoting *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961), and citing *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698-700, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984)). An agency like the FEC, to which Congress has delegated broad discretion in interpreting and administering a complex federal regulatory regime, is entitled to significant latitude when acting within its statutory authority, even in its decisions as to the scope of preemption of state law. *See also Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 151-55, 102 S.Ct. 3014, 3022-23, 73 L.Ed.2d 664 (1982). *But cf. Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (overturning agency preemption determination without mention of *Chevron* deference). In other words, even if a statute is on its face ambiguous, Congress's intent to preempt may be clear when the administrative agency expressly responsible for interpreting and implementing the statute has clarified it.

Finally, the State has failed to construct a compelling argument that the FEC's interpretation of the preemptive effect of FECA is unreasonable or inconsistent with Congressional intent. To

the contrary, I find the FEC's interpretation persuasive and corroborative of my own (and the district court's) understanding of the scope of the FECA preemption provision. Thus, even if the FECA preemption provision, read in light of the purposes and structure of the Act, is not adequately clear to preempt the Georgia statute expressly, FEC's interpretation of the statute settles the matter. I conclude that O.C.G.A. § 21-5-35, as applied to candidates for federal office, is preempted. Thus, the district court correctly decided that Teper has a substantial likelihood of success on the merits.

The district court's grant of a preliminary injunction is AFFIRMED.

CARNES, Circuit Judge, concurring:

I concur in the Court's holding that O.C.G.A. § 21-5-35, which has the effect of limiting the time for making contributions to some candidates for federal office, is preempted by the Federal Election Campaign Act, 2 U.S.C. § 431 *et seq.* ("FECA"). However, I would base that conclusion upon the express language of the preemption clause in the act, 2 U.S.C. § 453, which states unambiguously that the provisions of the act and rules prescribed under it, "supersede and preempt *any* provision of State law with respect to election to Federal office." (emphasis added) A state law regulating the time in which a category of citizens can accept contributions to run for election to federal office is a "State law with respect to election to Federal office." It is as simple as that. Moreover, nothing in either the legislative history of the act or in the rules and regulations adopted by the Federal Election

Commission casts any doubt upon the clear and manifest preemptive purpose of Congress as plainly stated in the act itself.[1]

The discussion in Judge Kravitch's opinion about the deference that might be due the Commission's regulations and advisory opinions if there were any ambiguity in FECA's preemption language is, in my view, unnecessary to proper decision of this appeal, because there is no ambiguity in the statutory language. Accordingly, while I agree that FECA preempts O.C.G.A. § 21-5-35, I do not join the part of Judge Kravitch's opinion that discusses the effect of the Federal Election Commission's regulations and advisory opinions.

HILL, Senior Circuit Judge, dissenting:

I dissent and I state my reason succinctly:[1]  "The fleas come with the dog."

First, there is no issue as to whether or not the federal law,

---

[1]The legislative history discussed in Judge Hill's dissenting opinion does not cast such doubt.  Although a Senate conference report does state, "It is the intent of the conferees that any State law regulating the political activities of State and local officers and employees is not preempted or superseded by the amendments to [the FECA]," S.Conf.Rep. No. 1237, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 5618, 5669, it is clear that this statement was aimed at preserving the so-called "little Hatch acts" of the states, not at permitting direct regulation of the activities of federal candidates. *See Weber v. Heaney,* 995 F.2d 872, 876-77 (8th Cir.1993) (overturning state law creating monetary incentives for federal candidates to limit campaign expenditures); *Reeder v. Kansas City Bd. of Police Comm'rs,* 733 F.2d 543, 545-46 (8th Cir.1984) (upholding a "little Hatch act").

[1]Today, our panel's judgment does, in effect, release appellee Teper from restraint of Georgia law.  While I disagree, I realize that this judgment ought to be mandated right away.  I should not be the instrument of delay while engaging in lengthy opinion writing.  [NOTE:  This was written and submitted while the Georgia legislature was still in session.]

FECA, preempts state law.  It does so, explicitly.  Therefore, what federal law controls, state law may not.

That is not the end of the inquiry.  The preemption is coextensive with FECA—no more, no less.  So, we should determine how far FECA goes.  We may look to legislative history to understand FECA.[2]

In *Reeder v. Kansas City Bd. of Police Comm'rs,* 733 F.2d 543 (8th Cir.1984), the Eighth Circuit did just that:

> The conference report on the bill that became the 1974 amendment leaves little room for doubt on this question.  The report says:
>
> > It is the intent of the conferees that any State law regulating the political activities of State and local officers and employees is not preempted or superseded by the amendments to title 5, United States Code, made by this legislation.
>
> S.Conf.Rep. No. 93-1237, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 5587, 5618, 5669.  Furthermore, right before the conference report was agreed to by the Senate, a colloquy took place between Senator Stevens and Senator Cannon that covers this very point.  Senator Cannon

---

[2]Briefs have argued, correctly, that we need not look to the legislative history of this Act to determine preemption *vel non*.  That is correct, but the extent of the reach of FECA, and, therefore, just *what* it preempts, is not so clear.

> Our majority finds comfort, in footnote 7 to the opinion, in noting that, long after the passage of FECA and its 1974 amendment, the Commission submitted its proposed regulation to Congress and was not allowed to promulgate it prior to the expiration of thirty days.  Noting that Congress did not disapprove the proposed regulation, our majority believes that this suggests a congressional interpretation of FECA in accord with that of the Commission.

> We have a long line of cases, however, which hold that once a bill has become an Act, the interpretation of it is for the Third Branch.  Post hoc expressions by legislators—what then-Judge Scalia called "subsequent legislative history"—is of no weight.  *See Gott v. Walters,* 756 F.2d 902, 914 (D.C.Cir.1985).

was Chairman of the Committee of Rules and Administration, from which the bill was reported, senior conferee on the part of the Senate, and manager of the bill on the Senate floor, so his remarks must be given special weight in determining what Congress meant to say. Mr. Cannon stated that "any State law regulating the political activity of State or local officers or employees is not preempted [or] ... superseded." 120 Cong.Rec. 34386 (Oct. 8, 1974). "It [would be] ... up to the State to determine the extent to which they may participate in Federal elections.[.]" *Ibid.* (remarks of Senator Stevens).

*Reeder,* 733 F.2d at 545-46.

When a law says that one may avail oneself of a right—as FECA says a federal candidate may solicit and receive campaign funds—that law does not forbid the candidate from voluntarily surrendering that right.

It happens all the time.

Georgia law, itself, circumscribes participation in charitable fund raising activities. *See* O.C.G.A. § 43-17-2, *et seq.* If one meets and complies with the requirements, it would seem that one may conduct a fund raising campaign.

But I think that a judge may not. Fund raising would violate a canon applicable specifically to the office. *See* Georgia Code of Judicial Conduct, Canon 5(B)(2). The judge has accepted a position of trust. By doing so, he or she has relinquished the right to solicit funds, though all the rest may do so. So you see, the fleas, do indeed, come with the dog.

The above does not implicate preemption. It illustrates proper construction of statutes in apparent tension but fully compatible.

The same principles of construction may be employed where preemption of one rule is clear. Our Bill of Rights trumps all aces. No provision of law is more preemptive.

For example, free expression is protected by the First Amendment; there may be no state law to the contrary. Indeed, in spite of some strong disapproval of states (and many of their citizens), some conduct deemed free expression embodied in rather bizarre entertainment is not subject to state regulation. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *see also Redner v. Dean,* 29 F.3d 1495 (11th Cir.1994).

At the same time, the sale and consumption of beverage alcohol is peculiarly subject to state regulation. When the Eighteenth Amendment's "war on whiskey" ended with the Twenty-first Amendment, control of alcohol was given to the states.

The upshot of this is that, while Georgia may not prohibit scantily clad terpsichorean performers from performing (it's protected expression), Georgia can absolutely prohibit the sale of alcohol at places where dancers dance. *See New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *see also Geaneas v. Willets,* 911 F.2d 579 (11th Cir.1990). The state, preempted by the First Amendment, is not undertaking to regulate dancers *qua* dancers. It is validly regulating the sale and consumption of alcohol *qua* alcohol.

In the case before us, I see no indication that Georgia has undertaken to regulate candidates for federal office *qua* candidates. The state undertakes—validly, I believe—to regulate its legislators *qua* legislators. If appellee Teper feels that he has unwisely encumbered himself by becoming a legislator, he holds the key to his release in his own pocket.

I have undertaken to be deferential to the conclusions of the Federal Election Campaign Commission that its power trumps this state law, but I remain convinced that its interpretation is flawed.  I really doubt that the reach of FECA is more preemptive than the First Amendment.

I would reverse.