Carol Nicole **LIGHTSEY**, Plaintiff,

v.

**GENERAL MOTORS CORP., TI Holdings, Inc., and TRW, Inc.**, Defendants.

**No. CIV. A. CV97–013.**

United States District Court, S.D. Georgia, Brunswick Division.

Sept. 24, 1997.

Ronald Elridge Harrison, II, Brunswick, GA, for Plaintiff.

Chilton Davis Varner, Franklin P. Brannen, Jr., S. Samuel Griffin, King & Spaulding, Michael L. McKenzie, Christopher J. York, John L. Choate, Cozen and O'Connor, Atlanta, GA, Richard A. Brown, Jr., Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, David B. Weinstein, David R. Tippetts, Wilson, Elser, Moskowitz, Edelman & Dicker, Houston, TX, Michael J. Athans, Lord, Bissell & Brook, Atlanta, GA, for Defendants.

## ORDER

ALAIMO, District Judge.

Plaintiff, Carol Nicole Lightsey ("Lightsey"), brings this diversity action against Defendants, General Motors Corp. ("GM"), TI Holdings, Inc. ("TI"), and TRW, Inc. ("TRW"), pursuant to 28 U.S.C. § 1332. Plaintiff alleges negligence and strict product liability claims against Defendants for injuries she sustained while a passenger in a Pontiac Grand Prix Coupe. She claims *inter alia*, that the failure of GM to equip the vehicle with an airbag, contributed to her injuries. GM has filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. GM contends that federal law both expressly and impliedly pre-empts Plaintiff's claim against GM for failing to equip the vehicle with an

airbag. For the reasons set forth below, Defendant's Motion for Partial Summary Judgment will be **GRANTED.**

## FACTS

On May 2, 1995, Lightsey was the front seat passenger in a 1991 Pontiac Grand Prix Coupe driven by Becky Eidson ("Eidson"). The two women were traveling on Arbor Parkway in Douglas County, Georgia. Eidson lost control of the vehicle and struck a tree. Lightsey contends that, at the time of the collision, she was wearing her lap and shoulder belt. Despite this fact, Lightsey contends that the seat belt failed to restrain her, and she was thrown into the dashboard of the vehicle. Lightsey claims that because her seat belt was defective and there was no passenger-side airbag, she suffered severe and permanent injuries.

GM manufactured the vehicle and equipped it with a door-mounted, three-point automatic seat belt system. Defendants, TI and TRW, manufactured and supplied the seat belt system. Lightsey does not claim that Defendants were responsible for the initial accident. Rather, she contends that Defendants failed to protect her from injury. Lightsey asserts that GM is strictly liable for her injuries, and that all Defendants were negligent on several grounds. Specifically, she alleges that Defendants failed to exercise ordinary care, failed to test the seat belt restraint system, and failed to warn of the defective seat belt restraint system. Lightsey also alleges that GM was negligent in selling a vehicle in a defective condition; that is, in equipping the vehicle with a faulty passenger-side seat belt and in failing to equip the vehicle with a passenger-side airbag.

The motion before the Court deals only with Lightsey's claim that GM was negligent in failing to equip the Pontiac Grand Prix with a passenger-side airbag. GM contends that the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381 et seq. (1982) ("Safety Act"), expressly pre-empts Lightsey's common law claim. GM contends that Lightsey's claim is within the scope of § 1392(d) of the Safety Act and, therefore, is pre-empted by the federal law.

In the alternative, GM contends that Lightsey's claim is impliedly pre-empted.

Under the Safety Act, federal regulators promulgated Federal Motor Vehicle Safety Standard 208 ("Standard 208"), which sets forth the requirements for passenger restraint systems in all cars manufactured in the 1991 model year. 49 C.F.R. § 571.208 (1991). Standard 208 required manufacturers to install a passive restraint system, but allowed manufacturers the option to install automatic seat belts, and not airbags. *Id.* GM contends that Lightsey's claim is impliedly pre-empted because it would hold an automobile manufacturer liable notwithstanding compliance with Standard 208.

## DISCUSSION

### I. *Summary Judgment*

Lightsey has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The Court should consider the pleadings, depositions, and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). Additionally, a "court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible'." *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir.1996).

## II. *Pre-emption*

The Supremacy Clause of the United States Constitution requires that all conflicts between federal and state law be resolved in favor of the federal rule. U.S. Const. art. VI, cl. 2. Thus, any state law that conflicts with the exercise of federal power is "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576, 595 (1981)). There is an assumption, however, that the historic police powers of the States are not to be superseded by federal law unless pre-emption is the clear and manifest purpose of Congress. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947). Accordingly, "the purpose of Congress is the ultimate touchstone" of pre-emption analysis. *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179, 184 (1963); *Cipollone*, 505 U.S. at 516, 112 S.Ct. at 2617, 120 L.Ed.2d at 422; *Gade v. National Solid Wastes Management Ass'n.*, 505 U.S. 88, 111, 112 S.Ct. 2374, 2389–90, 120 L.Ed.2d 73, 92 (1992).

Federal law may pre-empt state law in three ways. First, Congress may state explicitly the extent which the federal statute pre-empts state law. *Taylor v. General Motors Corp.*, 875 F.2d 816, 822 (11th Cir.1989). Second, despite the absence of express pre-emptive language, the text of a statute or its legislative history may evince Congress' intent to occupy a regulatory field to the exclusion of state law. *Id.* Third, even when Congress does not occupy the entire regulatory field, state law is pre-empted to the extent that it conflicts with federal law. *Id.* Specifically, state law is pre-empted if it is impossible to comply with both state and federal law, or if state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Teper v. Miller*, 82 F.3d 989, 993 (11th Cir.1996) (citations omitted).

In 1966, Congress passed the National Traffic and Motor Vehicle Safety Act. 15 U.S.C. § 1381 *et seq.* (1982). Through the Safety Act, Congress enabled, first, the Department of Transportation, and, later, the National Highway Transportation Safety Administration, to promulgate uniform motor vehicle safety standards. 15 U.S.C. § 1392(a) (1982). The safety standard at issue in this motion is Standard 208. For cars manufactured in the 1991 model year, Standard 208 gave automobile manufacturers the option of installing an automatic seatbelt without a passenger-side airbag. 49 C.F.R. § 571.208 (1991). Lightsey does not dispute that GM complied with Standard 208 by installing only an automatic seat belt in the Pontiac Grand Prix. Rather, Lightsey claims that, under Georgia law, she is entitled to recover against GM for its failure to provide an airbag, notwithstanding compliance with Standard 208. (Pl.'s Resp. Def.'s Mot. Partial Summ. J. at 1).

GM, however, contends that Lightsey's claim is expressly pre-empted because it is within the scope of § 1392(d), which provides:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. 15 U.S.C. § 1392(d) (1982).

Congress' intent, however, is discerned not only from the language of the pre-emption clause, but also from the statutory framework surrounding it. *Medtronic, Inc.*, 518 U.S. at 485–88, 116 S.Ct. at 2251–2252, 135 L.Ed.2d at 716. In the Safety Act, Congress included a savings clause, which provides: "Compliance with any Federal motor vehicle safety standard does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c) (1982). The savings clause seems to save common law claims from pre-emption.

The Eleventh Circuit addressed the apparent conflict between the Safety Act's pre-emption clause and its savings clause in *Taylor v. General Motors Corp.* 875 F.2d 816 (11th Cir.1989). The plaintiffs' claims in *Taylor* were essentially the same as Lightsey's claim in this action. In *Taylor*, the

plaintiffs alleged that the defendants, automobile manufacturers, were negligent in failing to install airbags in specific vehicles. As in this instant action, the defendants in *Taylor* had complied with Standard 208, the applicable safety standard. The court held that the Safety Act did not expressly pre-empt the plaintiffs' "no airbag" claims, but that the Act did implicitly pre-empt the claims. *Id.* at 827.

■ The court's holding in *Taylor* applies in this case: The Safety Act does not expressly pre-empt Lightsey's claim. The Court has a duty "to give effect to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–539, 75 S.Ct. 513, 520, 99 L.Ed. 615, 624 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 395, 27 L.Ed. 431, 433 (1883)). Yet, to construe § 1392(d) of the Safety Act as expressly pre-empting common law actions would render the savings clause superfluous. *See Taylor*, 875 F.2d at 824. Under such a construction, § 1392(d) would pre-empt all common law claims within the scope of the Safety Act and allow common law claims for automobile safety defects that are not specifically addressed by the Safety Act. Like the pre-emption clause, the savings clause would save claims not specifically addressed by the Safety Act. As the pre-emption clause itself allows claims not specifically addressed by the Safety Act, the savings clause would be a mere redundancy. *See id.* Given the inclusion of the savings clause in the Safety Act, Congress' intent to expressly pre-empt common law claims is not "clear and manifest." *See Rice*, 331 U.S. at 230, 67 S.Ct. at 1152, 91 L.Ed. at 1459 (1947). Therefore, the Court finds that the Safety Act does not expressly pre-empt Lightsey's claim that GM was negligent in failing to install passenger-side airbags.

GM contends, however, that the language, "any safety standard," in § 1392(d) includes common law actions and, therefore, pre-empts such actions. (Def.'s Br. Supp. Mot. Partial Summ. J. at 9–12). Defendant claims that recent Supreme Court decisions support such an interpretation. In *Cipollone*, the Court held that Congress intended to include common law claims when it pre-empted "State law" in Section 5 of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C.

§§ 1331–1334 (1982). 505 U.S. at 521, 112 S.Ct. at 2620, 120 L.Ed.2d at 426. The Court reasoned that "state regulation can be as effectively exerted through an award of damages as through some form of preventive relief." *Id.* (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 784 (1959)). Then, in *Medtronic, Inc. v. Lohr*, the Court affirmed its holding in *Cipollone*, stating that "a statute pre-empting certain state 'requirements' could also pre-empt common-law damages claims." 518 U.S. 470, 116 S.Ct. 2240, 2251, 135 L.Ed.2d 700, 717 (1996). However, in contrast to the Safety Act, the statute in *Cipollone* did not contain a savings clause. Congress' inclusion of the savings clause in the Safety Act is significant to the Court's finding that Lightsey's claim is not expressly pre-empted. *See Taylor*, 875 F.2d at 824–25.

■ While the Safety Act does not expressly pre-empt Lightsey's claim, the Act does impliedly pre-empt her claim. Under the principles of implied pre-emption, federal law pre-empts state law when state law creates "a potential frustration of the administrative scheme provided by [federal law]." *Taylor*, 875 F.2d at 825. Similarly, state law is impliedly pre-empted when it "interferes with the methods by which the federal statute was designed to reach [its] goal." *Id.* at 825–826. In *Taylor*, the court held that the plaintiffs' claims would "remove the element of choice authorized in Safety Standard 208" and, therefore, "frustrate the federal regulatory scheme." *Id.* at 827.

■ In this case, the facts are indistinguishable from those in *Taylor*. If Lightsey were successful in her action, GM would be punished for exercising an option provided under a federal standard. A state, however, "cannot impose common law damages on individuals for doing what a federal act or regulation authorized them to do." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318, 101 S.Ct. 1124, 1131, 67 L.Ed.2d 258, 265 (1981). Flexibility and variety are essential to the regulatory scheme set forth in Standard 208. 49 Fed.Reg. 28962 (1984). After much research, federal regulators concluded that the best way to achieve the goals of the Safety Act was to

include options for passenger restraints and to allow automobile manufacturers to select among the options.[1] Federal regulators included options to "provide sufficient latitude for industry to develop the most effective [occupant restraint] systems." 49 Fed.Reg. 28962. Standard 208 provided automobile manufacturers with a choice among several options for passenger restraints in 1991 model year cars, including the automatic seat belts GM installed in the 1991 Pontiac Grand Prix. 49 C.F.R § 571.208 (1991). Lightsey's claim contravenes the scheme set forth in Standard 208 by denying automobile manufacturers the choice provided them in Standard 208. For this reason, the Safety Act impliedly pre-empts Lightsey's claim. *See Taylor,* 875 F.2d at 825–828; *Chicago & N.W. Transp. Co.,* 450 U.S. at 318, 101 S.Ct. at 1131, 67 L.Ed.2d at 265.

Lightsey, however, contends that her claim should be allowed under *Doyle v. Volkswagenwerk Aktiengelellschaft,* 114 F.3d 1134 (11th Cir.1997). In *Doyle,* the plaintiffs sued an automobile manufacturer for injuries sustained in a 1989 Volkswagon Jetta. *Id.* at 1134. The defendant had equipped the vehicle with an automatic shoulder belt, but no lap belt. *Id.* The Northern District of Georgia held that the plaintiffs' common law claims were precluded under Georgia law and, thus, "found it unnecessary to reach the pre-emption issue." *Id.* at 1135. On appeal, the Eleventh Circuit reversed the decision of the district court and held that the plaintiffs' claims were not precluded by Georgia law. *Id.* Again, the court did not address federal pre-emption. Instead, the court remanded the action to the district court for further proceeding. *Id.* at 1135. Conceivably, the district court, relying on *Taylor,* will find the plaintiffs' claims pre-empted by the Safety Act. *See Taylor,* 875 F.2d at 827. Because the court did not address the issue of pre-emption in *Doyle,* the holding does not save Plaintiff's claim. *See* Doyle, 114 F.3d at 1134–1135. While Georgia law may allow Lightsey to bring an action against GM, the

airbag claim is impliedly pre-empted by the Safety Act for the reasons set forth above.

## CONCLUSION

The Court has carefully reviewed the briefs submitted by the parties. Because there is no remaining genuine issue of material fact, the Court hereby **GRANTS** Defendant's Motion for Partial Summary Judgment.

---

in occupant protection systems." Additionally, the Department concluded that if airbags were mandated, consumer fear of airbags "could lead to a backlash affecting the acceptability of airbags." 49 Fed.Reg. 28962.