995 F.2d 872
 61 USLW 2787
 John Vincent WEBER; James M. Ramstad; David F.
Durenberger, Appellees,
v.
William M. HEANEY; Bruce D. Willis; Vanne O. Hayes; Elsa
M. Carpenter; Douglas R. Ewald; Emily Ann Staples, in
their capacities as members of the Minnesota Ethical
Practices Board; Minnesota Ethical Practices Board;
Michael A. McGrath, in his capacity as Minnesota State
Treasurer; Dorothy A. McClung, in her capacity as Minnesota
Commissioner of Revenue, Appellants.
 No. 92-2458.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 18, 1993.
Decided June 17, 1993.
 
 Jocelyn F. Olson, Asst. Atty. Gen., St. Paul, MN, argued, for appellants.
 Douglas A. Kelley, Minneapolis, MN, argued, for appellees.
 Vivian Clair, Washington, DC, argued, for amicus curiae Federal Election Com'n.
 Before FAGG, MAGILL, and HANSEN, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 This case addresses the following issue: whether the Minnesota Congressional Campaign Reform Act, that establishes a system by which federal congressional candidates may agree to limit campaign expenditures and receive state funding for their campaigns, is preempted by the Federal Election Campaign Act (FECA). The district court[1] held that the Campaign Reform Act was preempted, granted the plaintiffs' motion for summary judgment, and permanently enjoined Minnesota from implementing and enforcing the Act. We affirm, holding the express FECA and regulatory preemptions are not ambiguous and the plain language of the preemptions cover the entire Campaign Reform Act.
 
 I. BACKGROUND
 
 2
 In 1990, the Minnesota legislature found spending on campaigns for federal congressional office had "increased to a disgraceful level"; the candidates' need to raise funds diverts them from meeting voters and publicly debating current issues; current contribution and spending practices combined with ethical scandals in Washington, D.C., have caused public perception of corruption; and the United States Congress has not enacted reforms. Minn.Stat. § 10A.40, subd. 1 (1990). In response to these findings, the legislature enacted the Minnesota Congressional Campaign Reform Act (Campaign Reform Act), Minn.Stat. §§ 10A.40-.51. The legislature intended the Act to supplement FECA, 2 U.S.C. §§ 431 et seq., by providing a statutory scheme designed to encourage congressional candidates to limit the amount of money spent on campaigns.
 
 
 3
 The Campaign Reform Act establishes a system by which United States congressional candidates who have agreed to limit their expenditures may receive public funding. If a congressional candidate meets certain eligibility requirements, see Minn.Stat. § 10A.43, subd. 1(a), the candidate may choose to sign an agreement limiting campaign expenditures, Minn.Stat. § 10A.43, subd. 2. This agreement limits expenditures for an election year to $3,400,000 for Senate candidates and $425,000 for House candidates. Minn.Stat. § 10A.44, subd. 1. The expenditure limits for a postelection year are twenty percent of the election year figures. Minn.Stat. § 10A.44, subd. 2, 4. These limits are adjusted for inflation. Candidates who have agreed to the limits may receive public funding from general state funds of up to twenty-five percent of the expenditure limits if they provide evidence of contributions equal to that amount. Minn.Stat. §§ 10A.43, subd. 1(a)-(b); 10A.48.
 
 
 4
 A condition applies to both the public funding and the limitations. If all the candidates for an office agree to be bound by the limits, none of the candidates will receive public funding, but all will be bound by the limits. Minn.Stat. § 10A.44, subd. 5(b). If all major party candidates agree to be bound, then the major party candidates will not receive public funding, but will remain bound by the limits. Minn.Stat. § 10A.44, subd. 5(c). If any candidate agrees to be bound by the limits, but a major party opponent does not agree to be bound, the candidate who agreed to be bound will receive public funding but may disregard the limits. Minn.Stat. § 10A.44, subd. 5(d).
 
 
 5
 Once a candidate has agreed to be subject to the expenditure limitations, the Minnesota Ethical Practices Board is authorized to enforce those limits. See Minn.Stat. § 10A.47, subds. 3, 4. A candidate who breaches an agreement to limit expenditures is subject to civil fines of up to four times the amount by which the expenditures exceed the limit. Minn.Stat. § 10A.47, subd. 1.
 
 
 6
 The Campaign Reform Act also provides benefits to contributors. A contributor to the campaign of a candidate who has agreed to limit expenditures is entitled to a state refund for the contribution of up to $100 per couple or $50 per individual. Minn.Stat. § 10A.43, subd. 5.
 
 
 7
 The Campaign Reform Act expressly states that Minnesota congressional candidates are bound by federal limitations on contributions and loans. See Minn.Stat. §§ 10A.45, 10A.47, subd. 2. It also expressly provides that disclosure and reporting requirements and political party expenditures on behalf of congressional candidates are governed by federal law. See Minn.Stat. §§ 10A.46, 10A.51.
 
 
 8
 Plaintiffs/appellees, who at the time the complaint was filed were all members of the United States Congress, requested an advisory opinion from the Federal Election Commission (FEC) concerning whether FECA preempted the Campaign Reform Act. Minnesota state officials, including the Minnesota Attorney General and authors of the Campaign Reform Act from both the Minnesota House of Representatives and the Minnesota Senate, submitted comments to the FEC on this issue. After reviewing these comments, the FEC issued an advisory opinion in which the commissioners unanimously concluded FECA preempts the Campaign Reform Act in its entirety. See Federal Election Commission, advisory opinion 1991-22 (Oct. 7, 1991).
 
 
 9
 Appellees then filed a complaint in district court against the defendants/appellants, Minnesota State officials responsible for enforcing various provisions of the Campaign Reform Act, in their official capacities. Appellees sought a declaration that the Campaign Reform Act (1) is preempted by FECA; (2) violates the First Amendment of the United States Constitution; and (3) violates the Privileges or Immunities Clause of the Fourteenth Amendment.
 
 
 10
 Appellees moved for summary judgment, which the district court granted on the ground that the Campaign Reform Act is preempted by FECA. The court concluded that a previous Eighth Circuit opinion was controlling authority that the FECA preemption provision was ambiguous, thus it was necessary to consider extrinsic aids to interpretation. The court stated the legislative history was inconclusive as to this issue. However, the FEC had promulgated a regulation stating FECA supersedes state law regarding contribution and expenditure limitations for federal candidates, and in an advisory opinion had specifically interpreted FECA to preempt the Campaign Reform Act. The court found the FEC's interpretation reasonable and deferred to it, holding FECA preempted the Campaign Reform Act in its entirety. The district court permanently enjoined the appellants from implementing and enforcing the Campaign Reform Act. 793 F.Supp. 1438.
 
 
 11
 The district court also rejected appellees' First and Fourteenth Amendment claims, holding that the First Amendment was not implicated by the Campaign Reform Act, and that appellees had failed to assert a fundamental right, which is a requisite for a claim under the Privileges or Immunities Clause. The First and Fourteenth Amendment claims are not before us on appeal.
 
 II. DISCUSSION
 
 12
 We review the district court's grant of summary judgment de novo, United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir.1992), and we apply the same standards used by the district court, Thelma D. by Delores A. v. Board of Educ., 934 F.2d 929, 932 (8th Cir.1991). We affirm only when the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Osborn v. E.F. Hutton & Co., 853 F.2d 616, 618 (8th Cir.1988). The material facts are not in dispute here; the only issue before us is a question of law: whether the Campaign Reform Act is preempted by FECA.
 
 
 13
 Congress passed FECA in 1971 and, in response to Watergate, amended it in 1974. This amended version limited political contributions, see 2 U.S.C. § 441a(a), and campaign expenditures.[2] It also replaced all prior disclosure laws concerning contributions and contained requirements for reporting and disclosing contributions. See 2 U.S.C. §§ 432, 434. Of primary importance in this case, FECA contains an express preemption clause which states: "The provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office." 2 U.S.C. § 453.
 
 
 14
 To enforce FECA, Congress created the FEC, vesting it with "primary and substantial responsibility for administering and enforcing the Act." Buckley v. Valeo, 424 U.S. 1, 109, 96 S.Ct. 612, 678, 46 L.Ed.2d 659 (1976). Congress delegated the FEC "extensive rulemaking and adjudicative powers," id. at 110, 96 S.Ct. at 678, and authorized it to prescribe rules and regulations to carry out the provisions of FECA, 2 U.S.C. § 438(a)(8). The FEC also is empowered to give advisory opinions when requested. See 2 U.S.C. §§ 437d(a)(7), 437f.
 
 
 15
 Congress' intent is the touchstone of our analysis of whether FECA preempts the Campaign Reform Act. See Cipollone v. Liggett Group, Inc., --- U.S. ----, ----, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). When Congress has not spoken expressly, a state law is preempted if it conflicts with federal law or if federal law "occupies a legislative field," indicating that Congress intended to leave no room for the states to supplement the federal law. Cipollone, --- U.S. at ----, 112 S.Ct. at 2617.
 
 
 16
 When Congress has spoken expressly, however, the preemptive scope of a federal law is governed entirely by the express language. "When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation." Id. at ----, 112 S.Ct. at 2618 (citations omitted).
 
 
 17
 Congress explicitly stated in 2 U.S.C. § 453 its intent that FECA preempt state law. Therefore, our task is only to "identify the domain expressly pre-empted by [this section]." Id. at ----, 112 S.Ct. at 2618. We recognize that § 453 is subject to more than one reading, and the areas preempted may vary with different readings. See Reeder v. Kansas City Bd. of Police Comm'rs, 733 F.2d 543, 545 (8th Cir.1984). We also recognize the strong presumption against preemption, and narrowly construe the language of § 453 to identify whether the Campaign Reform Act is preempted. See Cipollone, --- U.S. at ----, 112 S.Ct. at 2621. However, under every plausible reading of § 453, the Campaign Reform Act falls squarely within the boundaries of the preempted domain.[3]
 
 
 18
 Appellants have not supplied us with a narrow reading of § 453 which would exclude the Campaign Reform Act from the area preempted. They simply contend that this court has already established in Reeder that § 453 is ambiguous, and this court cannot rely on the plain language of the statute. Therefore, they claim, this court must rely on legislative history to determine whether Congress expressed a clear intention to preempt a statute such as the Campaign Reform Act. We disagree. In Reeder, this court was considering whether a state statute which prohibited Kansas City police officers from making political contributions was preempted by FECA. Reeder, 733 F.2d at 545. The Reeder court noted that § 453 could be read narrowly, referring primarily to candidates' behavior, and preempting state laws regarding contributions only to the extent that federal law prohibited certain kinds of contributions. However, if read broadly, § 453 would preempt some state laws which have remained valid, such as those regarding false registration or voting fraud. The Reeder court stated that § 453, "then, is not so clear (if any statute ever is) as to preclude us from consulting the legislative history." Id.
 
 
 19
 The Reeder court did not hold that § 453 is never clear concerning what is within the preempted domain. The Reeder court was facing a situation in which the state law in question was close to the boundaries of the domain preempted by FECA, and whether the law was preempted would depend on whether that section was read broadly or narrowly. In the case before us, however, the Campaign Reform Act is preempted whether § 453 is read narrowly, as preempting only laws regulating a candidate's behavior, or read broadly. This case " 'plainly does not present a borderline question....' " Morales v. Trans World Airlines, Inc., --- U.S. ----, ----, 112 S.Ct. 2031, 2040, 119 L.Ed.2d 157 (1992) (quoting Shaw v. Delta Air Lines, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). " 'We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning.' " Cipollone, --- U.S. at ----, 112 S.Ct. at 2620 (quoting Shaw, 463 U.S. at 97, 103 S.Ct. at 2900).
 
 
 20
 In an attempt to show us a good reason to believe Congress meant less than the plain language in § 453, appellants have cited to portions of legislative history. They claim these portions show Congress meant FECA to preempt state statutes only as to reporting, disclosure, and other areas explicitly covered.[4] However, these portions are merely suggestive of that conclusion, and appellees and amicus curiae[5] have countered by citing to other portions of legislative history which suggest Congress did intend to preempt the area governed by the Campaign Reform Act. Appellants have failed to provide us with a good reason to believe Congress meant less than it said. Thus, we must rely on the plain language in § 453. Cf. Reeder, 733 F.2d at 545-46 (holding a state statute not preempted when legislative history directly and clearly stated the type of statute at issue was not preempted).
 
 
 21
 Further, in 1977 the FEC promulgated a regulation identifying areas in which state regulation is preempted and areas in which it is not preempted. See 11 C.F.R. § 108.7. The FEC promulgated this regulation after the Supreme Court's decision striking down on First Amendment grounds certain FECA expenditure limitations for congressional candidates, see Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and Congress' subsequent repeal of those provisions.[6] The FEC regulation states that "Federal law supersedes state law concerning ... [l]imitation on contributions and expenditures regarding Federal candidates and political committees." 11 C.F.R. § 1.08.7(b)(3). By law, the FEC must submit a proposed regulation and an accompanying statement to both the House and the Senate. If neither house disapproves the proposed regulation within thirty days, the FEC may issue it. See 2 U.S.C. § 438(d); Federal Election Comm'n v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 34 n. 8, 102 S.Ct. 38, 43 n. 8, 70 L.Ed.2d 23 (1981). We find this duly authorized regulation is a further express preemption of the Campaign Reform Act. Congress did not reject this regulation when the Commission submitted it for review in 1977 or when Congress substantially revised FECA in 1979. See Pub.L. No. 96-187, 93 Stat. 1339 (1980). Such "congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."[7] Young v. Community Nutrition Inst., 476 U.S. 974, 983, 106 S.Ct. 2360, 2366, 90 L.Ed.2d 959 (1986) (quoting NLRB v. Bell Aerospace Co., 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974)).
 
 III. CONCLUSION
 
 22
 We hold FECA expressly preempts in its entirety the Minnesota Congressional Campaign Reform Act. Therefore, we affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota
 
 
 [2]
 In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court upheld most of FECA's provisions, but struck down some portions. As a direct result of this decision, Congress amended FECA in 1976 to repeal expenditure limits for congressional candidates. It retained expenditure limitations only for presidential candidates meeting certain qualifications. None of these provisions are at issue here
 
 
 [3]
 We are not defining the boundaries of the domain FECA preempts; we merely hold that the Campaign Reform Act is within those boundaries
 
 
 [4]
 Appellants also claim the Campaign Reform Act is not preempted because it does not conflict with FECA; it supplements federal law. This claim is irrelevant. "Nothing in the language" of § 453 suggests that FECA's "pre-emption is limited to inconsistent state regulation." Morales, --- U.S. at ----, 112 S.Ct. at 2038. Thus, supplemental and consistent state regulation is preempted as well
 
 
 [5]
 The Federal Election Commission
 
 
 [6]
 The district court held that the First Amendment was not violated by the expenditure limitations in the Campaign Reform Act. That issue is not before us
 
 
 [7]
 Appellants contend this regulation is not evidence of congressional intent. They claim the regulation does not even apply to the Campaign Reform Act because the candidates' expenditure limitations are triggered not by the state law, but by the candidates' voluntary agreement to limit spending. We disagree. Whether the expenditure limitations under Minnesota law are voluntary is irrelevant when considering whether the state law is preempted. The plain language in the preemption section of FECA preempts the Campaign Reform Act, and the regulation promulgated by the FEC does not distinguish between voluntary and involuntary limitations on expenditures
 We also question whether the limitations are truly voluntary. Contributors may receive a refund from the state when they contribute to a candidate who has agreed to limit campaign expenditures, which will enhance that candidate's fund raising ability. If a candidate agrees to limit expenditures and then does not abide by the limits, the candidate suffers substantial penalties. Additionally, candidates who do not agree to be bound by the spending limits are penalized because their opponents who have agreed to the limits will still receive public financing, but will not be bound to their agreement. The Minnesota law is not a carrot enticing candidates to comply; as a proponent of the bill boasted, it is "a real heavy club." Minnesota Congressional Campaign Reform Act, 1990: Hearings on S. 577 before the Subcommittee on Elections and Ethics, 76th Legis. (Mar. 1, 1989) (statement of Senator Marty).