RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JEROME WESTFIELD DEWALD,

    *Petitioner-Appellee*,

*v.*

No. 12-2076

GENE WRIGGELSWORTH,

    *Respondent-Appellant*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids
No. 1:08-cv-00906—Paul Lewis Maloney, Chief District Judge.

Argued: January 23, 2014

Decided and Filed: April 7, 2014

Before: COLE, GILMAN, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Linus Banghart-Linn, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant, J. Nicholas Bostic, BOSTIC & ASSOCIATES, Lansing, Michigan, for Appellee. **ON BRIEF:** Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant, J. Nicholas Bostic, BOSTIC & ASSOCIATES, Lansing, Michigan, for Appellee.

    GILMAN, J., delivered the opinion of the court, in which DONALD, J., concurred. COLE, J. (pp. 12–21), delivered a separate dissenting opinion.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  The district court granted habeas relief under 28 U.S.C. § 2254 to Jerome Westfield Dewald with regard to his state convictions for common-law fraud and larceny by conversion, which arose from Dewald's diversion of presidential campaign contributions into a bank account that he controlled.  In doing so, the court concluded that the Federal Election Campaign Act (FECA), 2 U.S.C. §§ 431 *et seq.*, preempted the state-law basis for those convictions, and that the Michigan Court of Appeals' determination to the contrary was objectively unreasonable.

Sheriff Gene Wrigglesworth, on behalf of the state of Michigan, contends that the district court erred in granting habeas relief because (1) there is no clearly established federal law, as determined by the Supreme Court, holding that the FECA precludes a state from prosecuting a defendant for committing fraud in the context of a federal election; and (2) even if federal preemption provides "clearly established federal law" in general, the state appellate decision affirming Dewald's convictions did not unreasonably apply those general principles to the case before it.  Because we find the State's arguments persuasive, we REVERSE the judgment of the district court.

## I.  BACKGROUND

### A.     Factual background

During the 2000 presidential election, Dewald established and operated two political action committees (PACs), one called "Friends for a Democratic White House" and the other called "Swing States for a GOP White House."  Dewald, under the pretense of soliciting campaign funds for each PAC, mailed fundraising letters to political donors whose names and addresses appeared on donor lists maintained by the Federal Election Commission.

The PACs collected approximately $750,000 in contributions, but Dewald paid less than 20 percent of that amount to the political parties or to any outside PACs.  He instead funneled

most of the campaign donations into his own for-profit corporation that provided "consulting and administrative services" to each of the two PACs. The money ultimately flowed into a bank account maintained by Dewald's consulting firm, or was seized by the State in conjunction with the underlying criminal investigation.

## B.     State-court procedural history

Dewald was indicted under Michigan law for obtaining money under false pretenses, common-law fraud, and larceny by conversion. A jury convicted him on all counts. He was initially sentenced to concurrent prison terms of 24 to 60 months on Count One (false pretenses); 90 days on Count Two (false pretenses); and 30 to 120 months on Counts Three through Six (fraud and larceny by conversion). The state trial court later resentenced Dewald because of a sentencing miscalculation, which reduced his overall sentence to between 23 and 120 months.

Dewald then appealed his convictions to the Michigan Court of Appeals. He raised a number of claims, including whether the FECA preempts the state-law charges against him. The Michigan Court of Appeals rejected all of his claims. *See People v. Dewald*, 705 N.W.2d 167, 173 (Mich. Ct. App. 2005). Regarding Dewald's preemption claim, the Michigan Court of Appeals reasoned:

> Congress stated that the provisions of the Federal Election Campaign Act (FECA) "supersede and preempt any provision of State law with respect to election to Federal office." 2 USC 453. However, federal courts have held that "'courts have given section 453 a narrow preemptive effect in light of its legislative history.'" *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1280 (C.A.5, 1994), quoting *Stern v. Gen. Electric Co.*, 924 F.2d 472, 475 n. 3 (C.A.2, 1991). Additionally, federal courts have held that Congress did not intend the criminal sanctions of the FECA to be a substitute for all other possible criminal sanctions. *United States v. Trie*, 21 F Supp 2d 7, 19 (D.D.C., 1998), citing *United States v. Hopkins*, 916 F.2d 207, 218 (C.A.5, 1990), *United States v. Curran*, 20 F.3d 560, 556 (C.A.3, 1994), and *United States v. Oakar*, 924 F. Supp. 232, 245 (D.D.C., 1996), aff'd in part and rev'd in part on other grounds, 111 F.3d 146, 324 U.S. App DC 104 (1997). Defendant was charged with and convicted of Michigan state-law crimes. These crimes are not specifically preempted by 2 USC 453. Defendant does not cite another portion of the federal statute that specifically preempts a state from pursuing criminal charges when the crimes are brought against a factual background that involves an election. There is also no conflict between state and federal law in this area. Defendant's convictions for the crimes

at issue were not barred by the FECA.  Thus, we reject defendant's federal-preemption argument.

*Id.*  The Michigan Supreme Court subsequently denied Dewald leave to appeal.  He then unsuccessfully sought post-conviction relief in state court.

## C.     Federal habeas petition

After exhausting his state post-conviction appeals, Dewald filed his petition for a writ of habeas corpus in the United States District Court for the Western District of Michigan.  Both the magistrate judge and the district court judge agreed that habeas relief should be granted on Dewald's convictions for fraud and larceny by conversion.  This timely appeal by the State followed.

## II.  ANALYSIS

## A.     Standard of review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §§ 2254, *et seq.*, governs Dewald's petition.  AEDPA requires us to deny habeas relief with respect to any federal constitutional claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d).

## B.     Clearly established federal law

"Under AEDPA, if there is *no* clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 454 (6th Cir. 2005) (emphasis in original) (internal quotation marks omitted).  Identifying clearly established federal law is thus the "threshold question under AEDPA." *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  In answering this threshold question, we must consult "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (internal quotation marks omitted).

This straightforward AEDPA test is easier to state than apply. The Supreme Court has noted the tension "between applying a rule and extending it" in the determination of clearly established law. *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004). For example, the Supreme Court has acknowledged that "if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision." *Id.* The Supreme Court has recognized, however, that "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Id.*

This tension is present here, with Dewald arguing that we can apply general standards of federal preemption to this case without exceeding our inquiry under AEDPA. In making this argument, Dewald minimizes the significance of the lack of Supreme Court cases directly addressing FECA preemption. Michigan, in turn, argues that whether the FECA preempts state-court criminal prosecutions is a question that "has not been presented to, let alone answered by, the United States Supreme Court."

The proper disposition of this case largely turns on how one characterizes the conduct for which Dewald was prosecuted. As viewed by the district court, the Michigan Court of Appeals committed a fundamental error by permitting the State to prosecute Dewald for using a federal candidate's name to unlawfully solicit campaign contributions from those persons shown on donor lists maintained by the Federal Election Commission. This led the court to conclude that the State's prosecution of Dewald intruded into areas of the law that were expressly governed by the FECA. *Cf. U.S. Term Limits v. Thornton*, 514 U.S. 779, 805 (1995) (voiding an Arkansas statute that limited the number of times that a person could run for Congress, with the Court holding that the statute violated the Constitution's Election Clause by in effect regulating a federal election).

But Dewald's conduct did not add a new qualification for federal office as in *Thornton*, nor did his prosecution regulate a federal election or upset the federal-state electoral balance. Rather, Dewald simply used the 2000 presidential election to create an air of legitimacy for his illegitimate objective: to funnel money to his for-profit consulting firm under false pretenses. His prosecution thus reflected the State's inherent authority to prosecute wrongdoing within its

borders. The district court was therefore mistaken when it framed this case as a question of the State attempting to regulate a federal election by prosecuting Dewald.

In addition to mischaracterizing the conduct for which Dewald was prosecuted, the district court found preemption based upon principles distilled from various Supreme Court cases that addressed federal laws other than the FECA. These laws included three separate federal statutes related to food packaging, *Jones v. Rath Packing Co.*, 430 U.S. 519, 534–43 (1977), the Employee Retirement Income Security Act, *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 108–09 (1983), and the Clean Water Act, *International Paper Co. v. Ouelette*, 479 U.S. 481, 491 (1987), respectively. Dewald urges us to find clearly established federal law regarding FECA preemption based upon these cases.

But none of these cases addresses whether the FECA preempts state-law convictions for fraud-related crimes, nor has Dewald cited any cases so holding. Indeed, when Dewald was convicted (and even as of the date of this opinion), no Supreme Court case had held that the FECA preempts state-law fraud claims, let alone interpreted the key statutory provisions at issue in this case. Supreme Court cases applying general preemption principles in unrelated circumstances to unrelated statutes do not, by definition, provide clearly established federal law in this case because their holdings do not "squarely address[]" preemption in light of the FECA. *See Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (reversing the grant of habeas relief with regard to a particular exception to the clearly established ineffective-assistance-of-counsel standard because "[n]o decision of this Court . . . squarely addresses the issue in this case").

AEDPA deference counsels against "break[ing] new ground" on unsettled legal issues, *Williams v. Taylor*, 529 U.S. 362, 381 (2000) (opinion of Stevens, J.), or interpreting existing caselaw to decide "an open question in our jurisprudence." *Carey v. Musladin*, 549 U.S. 70, 76 (2006) (denying habeas relief because "[t]his Court *has never addressed* a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial" (emphasis added)). Whether the FECA preempts state-law prosecutions like Dewald's is an open question that the Supreme Court has never addressed. *See id.* (declining to find clearly established law because, although the Court had generally articulated a defendant's

fair-trial rights, "we have never applied that test to spectators' conduct"). We therefore find no clearly established federal law in this case.

Our dissenting colleague disagrees, claiming that we are establishing a "bright-line rule [that] could never account for the myriad permutations preemption might take." Dissenting Op. at 13. But our holding does no such thing. If, for example, a new factual scenario arises under AEDPA in connection with a statute that has previously been addressed by the Supreme Court, we would certainly consider extending those principles to "myriad permutations." We believe that this conclusion is consistent with the Supreme Court's pronouncement that "[i]f the rule in question is one which of necessity requires a case-by-case examination of the evidence," then courts "can tolerate a number of specific applications without saying that those applications themselves create a new rule." *Williams*, 529 U.S. at 382 (internal quotation marks omitted).

But in a case like this, where the Supreme Court has answered *none* of the relevant legal questions before us, we cannot find clearly established law. The Court, for example, has never discussed the scope of the FECA's preemption clause, nor has it analyzed the Federal Election Commission's preemption regulations. This is a classic "open question." *See Carey*, 549 U.S. at 76. AEDPA would be "undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law." *See Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004).

If we were to apply federal preemption principles in the manner urged by Dewald, we would in effect "create a new rule" because the scope of FECA preemption would be transformed from an open question into a settled principle. This result would be particularly troubling considering the number of other federal courts that have concluded that the FECA does *not* preempt various state laws. *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 200–01 (5th Cir. 2013) (collecting cases from the Second, Fifth, and Eighth Circuits in concluding that the FECA does not preempt a receiver's attempts under Texas law to recoup fraudulently obtained political contributions); *see also Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1280–81 (5th Cir. 1994) (holding that the FECA does not preempt a state law addressing the financial liability of candidates for the debts of their principal campaign

committees). Because no Supreme Court case has held that the FECA preempts state-law fraud claims, Dewald's convictions did not violate clearly established law under the AEDPA standard.

**C.     Unreasonable application of clearly established law**

Even if we were to apply general preemption principles to the specific facts of this case, we cannot conclude that the Michigan Court of Appeals' conclusion was unreasonable.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  And in this case we confront the issue of preemption at an expansive level of generality because the Supreme Court has never addressed the FECA in the context of preemption.  We therefore ask not whether the state court's determination was incorrect, but rather whether fair-minded jurists could disagree about whether the state court's decision conflicts with existing Supreme Court caselaw.  *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("[AEDPA] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.").

Our dissenting colleague makes one bare-bones reference to the fair-minded-jurist standard at the end of his opinion.  Dissenting Op. at 21.  The dissent instead emphasizes that the Michigan Court of Appeals simply ignored, misapplied, or failed to consider the relevant legal principles.  *Id.* at 12, 17.  But the Michigan Court of Appeals in fact cited cases from our sister circuits that have interpreted the FECA's preemption clause, discussed the purposes of the FECA, and weighed the competing federal-state considerations.  *See, e.g.*, *Thornburgh*, 39 F.3d at 1280–81.  Indeed, the cases cited by the Michigan Court of Appeals directly address the various theories of preemption in the context of the FECA.  *See id.* (holding that "courts have given section 453 a narrow preemptive effect in light of its legislative history" and rejecting an argument based on conflict preemption); *see also Stern v. Gen. Elec. Co.*, 924 F.2d 472, 475 (2d Cir. 1991) (opining on the "narrow wording" of the FECA's preemption clause and rejecting arguments based on field and conflict preemption).

We reserve judgment as to whether the Michigan Court of Appeals' reliance on these cases was *correct*, for that is not our inquiry under AEDPA.  *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (explaining that the correctness of a state court's decision is not the

appropriate inquiry in habeas proceedings). But we find that the Michigan Court of Appeals' reliance on these cases was *reasonable*, particularly considering the lack of guidance from the Supreme Court in the context of FECA preemption. *See Yarborough*, 541 U.S. at 664 ("Applying a general standard to a specific case can demand a substantial element of judgment.").

In addition, the Michigan Court of Appeals' observation that "courts have given section 453 a narrow preemptive effect in light of its legislative history" is a reasonable one. Under this section, the provisions of the FECA "supersede and preempt any provision of State law with respect to election to Federal office." Other courts have struggled to define the contours of this language, recognizing that "§ 453 is subject to more than one reading, and the areas preempted may vary with different readings." *Weber v. Heaney*, 995 F.2d 872, 875 (8th Cir. 1993); *see also Reeder v. Kansas City Bd. of Police Comm'rs*, 733 F.2d 543, 545 (8th Cir. 1984) ("The preemption statute, then, is not so clear (if any statute ever is) as to preclude us from consulting the legislative history."). If the statute's reach has puzzled other courts confronting the issue on de novo review, its meaning hardly becomes clearer when viewed through an AEDPA-tinged lens. An ambiguous statute is fertile ground from which fair-minded disagreements grow, and we find that the Michigan Court of Appeals' narrow construction of the FECA's preemption provision is a reasonable reading of existing precedent.

The dissent next seeks to do the state court's work for it, reasoning that had the court undertaken an independent analysis of the FECA's preemption clause or its accompanying regulations, then preemption would have been found. Dissenting Op. at 17. But we cannot conduct "our own independent inquiry into whether the state court was correct as a *de novo* matter." *Yarborough*, 541 U.S. at 665. And the dissent's contention that "Congress enacted a broad preemption clause in § 453(a)," Dissenting Op. at 18, is directly contradicted by the Michigan Court of Appeals' citation to *Thornburgh*, in which the Fifth Circuit concluded that the FECA's preemption clause has been given "narrow preemptive effect." *Thornburgh*, 39 F.3d at 1280. The dissent's apparent disagreement with *Thornburgh*'s interpretation of the FECA's preemption clause is precisely the type of fair-minded disagreement that precludes a grant of habeas relief. *See Knowles*, 556 U.S. at 123 (holding that the appropriate inquiry under AEDPA

is "not whether a federal court believes a state court's determination . . . was incorrect but whether that determination was unreasonable—a substantially higher threshold") (internal quotation marks omitted).

In addition to the FECA's preemption clause, we find significant the fact that the regulations promulgated by the Federal Election Commission include a list of state activities and laws that are *not* preempted by the FECA, the most relevant of which is the "[p]rohibition of false registration, *voting fraud*, theft of ballots, *and similar offenses*."  11 C.F.R. § 108.7(c)(4) (emphases added).  This case does not address "voting fraud" in the traditional sense of someone casting a ballot under false pretenses; instead, it is about the fraudulent acquisition of money by an individual purporting to represent a federally registered PAC.  With voting fraud and similar offenses explicitly not preempted by the regulations, we find nothing unreasonable in the decision of the Michigan Court of Appeals to allow Dewald to be prosecuted for obtaining money under false pretenses, common-law fraud, and larceny by conversion.

The dissent, however, contends that our reliance on this regulation is a "red herring." Dissenting Op. at 18.  But its own analysis demonstrates why fair-minded jurists could disagree about the application of 11 C.F.R. § 108.7(c)(4).  According to the dissent, run-of-the-mill fraud cannot qualify as a "similar offense[]" because it is not "similar in nature" to voting fraud. (Dissenting Op. at 19)  Yet reasonable jurists could certainly disagree about whether voting fraud and general fraud are sufficiently similar in nature so that Dewald's conduct could fall under § 108.7(c)(4).  *Cf. Cook v. Gralike*, 531 U.S. 510, 523–24 (2001) (emphasis added) (internal quotation marks omitted) (explaining that the Elections Clause, found in Article I, Section 4 of the Constitution, grants to states the ability to regulate "notices, registration, supervision of voting, protection of voters, [and the] *prevention of fraud and corrupt practices*," among other things).  To conclude otherwise would produce a situation in which a state could prosecute voting fraud, but would be left without recourse to punish other fraudulent conduct arising— however tangentially—in the context of a federal election.

Finally, the dissent's contention that the Michigan Court of Appeals misapplied the presumption against preemption arises from a mischaracterization of this case.  Dissenting Op. at 20.  Neither Dewald through his fraudulent scheme, nor the State by its prosecution of him,

attempted to *regulate* a federal election. Michigan's decision to prosecute Dewald simply reflects the fundamental principle that states may exercise concurrent jurisdiction to prosecute crimes within their borders. *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause."). We thus conclude that the Michigan Court of Appeals reasonably decided that the presumption against preemption applies in this case.

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court. Dewald's petition for a writ of habeas corpus is **DENIED**.

---

**DISSENT**

---

COLE, Circuit Judge, dissenting.   Where, as here, a state court ignores or misapplies nearly every governing legal principle at issue, habeas corpus relief is warranted.  I respectfully dissent from the majority's conclusion that there was no "clearly established Federal law" that could form the basis for relief under 28 U.S.C. § 2254.  General principles governing the federal preemption of state laws form a core component of our republic.  Those principles, anchored in the Supremacy Clause of the Constitution, and articulated in Supreme Court cases spanning from *McCulloch v. Maryland*, 4 Wheat. 316 (1819), to *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), provide clearly established federal law for habeas purposes.  By any measure, the Michigan Court of Appeals unreasonably applied those principles in affirming Dewald's convictions.  Accordingly, I would affirm the district court's well-reasoned grant of the writ.

## I.  WHEN FEDERAL LAW IS "CLEARLY ESTABLISHED"

To grant Dewald habeas relief, the majority would require a Supreme Court decision specifically holding that the FECA preempts state-law fraud claims.  This approach frames the clearly established federal law inquiry far too narrowly.  *See Williams v. Taylor*, 529 U.S. 362, 382 (2000) (opinion of Stevens, J.) ("[R]ules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule.").  As the Supreme Court has made clear, habeas relief is warranted not only when "the state court . . . unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply," but also when the state court "unreasonably *refuses to extend that principle to a new context where it should apply*."  *See id.* at 407 (opinion of the court) (emphasis added); *accord Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (plurality opinion).  Put another way, "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied."  *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (internal quotation marks omitted).

To the contrary, "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004). Thus, "[i]f the rule in question is one which of necessity requires a case-by-case examination of the evidence," then courts "can tolerate a number of specific applications without saying that those applications themselves create a new rule." *Williams*, 529 U.S. at 382 (opinion of Stevens, J.) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992)). What could be more fundamental than our settled practice, set forth in the Constitution and made clear by nearly 200 years of Supreme Court precedent, that Congress may declare the supreme law of the land by preempting state legislation? More importantly for this appeal, how could the Supreme Court ever articulate a rule of law that "squarely addresses"—at least for the majority's purposes—the thousands of federal and state statutes that could conceivably interact in a given factual setting?

The simple answer is that no rule of law could provide the certitude the majority demands by addressing every possible instance of preemption. But this is no reason to deny habeas relief outright. *Strickland v. Washington*, 466 U.S. 668 (1983), offers a helpful analogy. In *Strickland*, the Supreme Court announced a generalized legal standard that lower courts must apply to a variety of factual settings. *Id.* at 687. There, the Court acknowledged the difficulty in articulating a bright-line rule that could apply to every variation of inadequate legal representation. *See id.* at 688 ("More specific guidelines are not appropriate."). Yet the Supreme Court has held, time and again, that *Strickland*'s generalized standards provide clearly established federal law for habeas purposes. *See, e.g.*, *Romplilla v. Beard*, 545 U.S. 374, 380 (2005) (granting habeas corpus relief under a *Strickland* ineffective assistance of counsel claim); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (same).

The same holds true for claims of federal preemption. A bright-line rule could never account for the myriad permutations preemption might take. Therefore, the Supreme Court has established general principles governing preemption that are, of necessity and by design, broad enough to permit case-by-case application to the precise federal and state laws at issue in a given dispute. *See, e.g.*, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (discussing general

principles of federal preemption); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525–26 (1977) (same); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (same).

As such, I find unpersuasive the majority's reasoning that Supreme Court cases applying general preemption principles in other contexts "do not, by definition, provide clearly established federal law in this case." Op. at 6. The cases cited in support of this proposition are readily distinguished. In *Wright v. Van Patten*, 552 U.S. 120 (2008), the Seventh Circuit granted habeas relief because the Wisconsin Court of Appeals did not evaluate a defendant's ineffective assistance of counsel claim under the more particularized standard from *United States v. Cronic*, 466 U.S. 648 (1984). *Van Patten*, 552 U.S. at 125. But there, the Seventh Circuit first conceded that the case "present[ed] [a] novel . . . question" of whether *Cronic* even ought to apply. *Id.* The Supreme Court reversed on the grounds that it was not "clearly establishe[d] that *Cronic* should replace *Strickland* in this novel factual context." *Id.* In short, habeas relief was improper because the state court was not obligated to apply a particular legal rule. *See id.* Similarly, in *Carey v. Musladin*, 549 U.S. 70 (2006), the Supreme Court reversed the grant of habeas relief on the grounds that "[n]o holding of this Court required the California Court of Appeal to apply the test of *Williams* and *Flynn* [involving prejudicial courtroom practices of state officials] to the *spectators*' conduct here." *Id.* at 77 (emphasis added). Again, habeas relief was improper because the state court was not obligated to apply a particular governing standard. *Id.*

Here, in contrast, no one contests that the state court was *obligated* under the Supremacy Clause and long-standing Supreme Court precedent to consider Dewald's preemption argument. The Michigan Court of Appeals acknowledged as much in its opinion, when it attempted (haphazardly) to evaluate Dewald's claim under the very governing standards the majority would now have us believe were not clearly established. *See People v. Dewald*, 705 N.W.2d 167, 173 (Mich. Ct. App. 2005). The State's attorney conceded the same at oral argument when he admitted that the state court was required to consider the general principles governing federal preemption and agreed that what we are really debating is the reasonableness of the state court's application of those principles.

While the majority insists that this case involves a novel question, its novelty pertains only to the state court's *application* of preemption principles—not their existence or the state

court's obligation to consider them. As such, the Supreme Court's general principles governing federal preemption provide the clearly established federal law necessary to grant habeas relief.

## II.  GENERAL PRINCIPLES GOVERNING FEDERAL PREEMPTION

The Supreme Court has "clearly established" several general principles that govern federal preemption of state legislation. *See, e.g.*, *Crosby v Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (declaring it a "fundamental principle" of our republic "that Congress has the power to preempt state law"); *Cipollone*, 505 U.S. at 516–17 (collecting cases). Preemption generally arises in one of three forms: express preemption, field preemption, or conflict preemption. *Cipollone*, 505 U.S. at 516. This case involves express preemption, which occurs when Congress enacts legislation with a preemption clause, thereby explicitly declaring the preeminence of federal law in a given regulatory area. *See, e.g.*, *Lorillard Tobacco Co.*, 533 U.S. at 541; *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 95–101 (1983). Three clearly established principles guide any express preemption analysis.

*First*, it is well settled that "[t]he purpose of Congress is the ultimate touchstone" of any preemption analysis. *Cipollone*, 505 U.S. at 516 (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)). Accordingly, when Congress has enacted an express preemption clause, the central duty of a reviewing court is "to identify the domain expressly pre-empted" by that clause, because "an express definition of the pre-emptive reach of a statute . . . supports a reasonable inference . . . that Congress did not attempt to preempt other matters." *Lorillard Tobacco Co.*, 533 U.S. at 541 (citations omitted). This duty includes, where possible, following an agency's regulation defining the scope of federal preemption. *See City of New York v. FCC*, 486 U.S. 57, 63–64 (1998).

*Second*, when determining whether federal legislation preempts state law, courts must look not only to the state law as written, but also to how it is interpreted and applied in a given factual setting. State laws of general applicability, while not necessarily preempted on their face, may nevertheless be preempted "as applied." *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 218, 226–28 (1995) (holding the Illinois Consumer Fraud Act preempted by the Federal Airline Deregulation Act to the extent the state law applied to airline frequent flier programs); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 525 (1981) (holding a state workers' compensation

regime preempted by ERISA to the extent state law applied to pension plans governed by federal law); *Rath Packing Co.*, 430 U.S. at 526 ("This [preemption] inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written."). As the Supreme Court has explained, it would create an "utterly irrational loophole" to the general principles of federal preemption "if state impairment of the federal scheme should be deemed acceptable so long as it is effectuated by the particularized application of a general statute." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992).

*Third*, because the states are independent sovereigns in our federal system, courts generally "start with the assumption that the historic police powers of the States were not to be superseded by [federal legislation] unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230. Accordingly, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption'" in areas of traditional state regulation. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)). This presumption of non-preemption does not apply, however, when states regulate in an area "where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000).

This discussion of the general principles governing federal preemption underscores my belief that the *real* issue on appeal is whether the state court unreasonably applied preemption principles—not whether they were clearly established. As demonstrated, the Supreme Court had clearly established this body of federal law prior to the state-court determination in the instant case. Moreover, these governing principles are, of necessity, broad enough to permit case-by-case application to the precise federal and state laws at issue in a given dispute. By 2005, the Supreme Court had applied these principles in a host of cases ranging from state regulation of the purchase of foreign goods, *Crosby*, 530 U.S. at 366, to state disability benefits requirements, *Shaw*, 463 U.S. at 36, to local ordinances governing plasma donation, *Hillsborough Cnty., Fla. v. Automated Med. Labs, Inc.*, 471 U.S. 707, 713 (1985), just to name a few. Lower courts, ours included, have consistently applied these principles to the FECA as well. *Bunning v. Kentucky*, 42 F.3d 1008, 1011–12 (6th Cir. 1993); *Janvey v. Democratic Senatorial Campaign Comm., Inc.*,

712 F.3d 185, 200–02 (5th Cir. 2013).  I therefore turn to consider the reasonableness of the state court's determination in light of the governing law on federal preemption.

### III.  REASONABLENESS OF THE STATE COURT'S DETERMINATION

The majority states that the appropriate inquiry under AEDPA is "not whether a federal court believes a state court's determination . . . was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Mirzayance*, 556 U.S. at 123.  No quarrel there.  I note for good measure that when "the [legal] standard is a general standard," as it is here, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*  Nevertheless, the Supreme Court has made clear the following:

> That the standard is stated in general terms does not mean that the [state court's] application was reasonable. . . . Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced.  The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner.  These principles guide a reviewing court that is faced, as we are here, with a record that cannot, under any reasonable interpretation of the controlling legal standard, support a certain legal ruling.

*Panetti*, 551 U.S. at 953 (citations and internal quotation marks omitted).  Where, as here, the state court either ignores or misapplies nearly every governing legal principle, I believe habeas relief is warranted, regardless of how general the controlling legal standards may be.

### A.  The State Court Failed to Identify the Domain Expressly Preempted by Federal Law

As the magistrate judge in Dewald's federal habeas case properly concluded after a thorough review of the state-court opinion at issue, "The decision of the Michigan Court of Appeals ignored virtually every principle established by the Supreme Court to govern preemption analysis." *Dewald v. Wrigglesworth*, No. 1:08–cv–906, 2012 WL 3206021, at *21 (W.D. Mich. Jan. 9, 2012).  Most glaringly, the state court made no effort—as was its central duty under Supreme Court precedent—to analyze the FECA's express preemption clause or to identify the domain of state law expressly preempted. *See Lorillard Tobacco Co.*, 533 U.S. at 541 (citing *Cipollone*, 505 U.S. at 517).

Had the Michigan Court of Appeals considered the FECA's preemption clause, or had it consulted the FEC's implementing regulations, which also preempt state law under the plain language of 2 U.S.C. § 453(a), the state court would have concluded, as the district court concluded, that Dewald's prosecutions were preempted. *See Dewald*, 2012 WL 3206021, at *16. Congress enacted a broad preemption clause in § 453(a), which states that the FECA and its regulations "supersede and preempt *any* provision of State law with respect to election to Federal office." 2 U.S.C. § 453(a) (emphasis added). Congress followed this broad preemption clause with a single, narrow exception (inapplicable here) governing the use of funds for the purchase or construction of an office building for political parties. *Id.* § 453(b). Congress enacted no other exceptions to the FECA's preemptive reach. Had Congress desired to do so, surely it knew how. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3250 (2010) ("We generally presume that Congress does not, one might say, hide elephants in mouseholes." (citation and internal quotation marks omitted)).

The Michigan Court of Appeals also failed to heed the Supreme Court's unanimous holding in *City of New York v. Federal Communications Commission*, which states that courts must follow an agency's regulation defining the scope of preemption absent congressional intent to the contrary. *See* 487 U.S. at 63–64. Here, the state court failed to cite or even consider the FEC's preemption regulations. *See Dewald*, 705 N.W.2d at 175. Had the court of appeals done so, and had it fulfilled its obligation to consider an "as applied" challenge to the state laws at issue, the court would have recognized that Dewald's prosecutions were preempted by 11 C.F.R. § 108.7(b)(1)–(b)(2), which provide that "Federal law supersedes State law concerning the [] organization and registration of political committees supporting Federal candidates [and] [d]isclosure of receipts and expenditures by Federal candidates and political committees."

The majority finds it "significant" that the FEC's regulations elsewhere provide that the "[p]rohibition of false registration, *voting fraud*, theft of ballots, *and similar offenses*" are not preempted by the FECA. Op. at 10 (citing *Id.* § 108.7(c)(4) (emphasis added)). I believe this is a red-herring—offered as little more than a post-hoc justification for an otherwise unreasonable application of clearly established federal law. Even so, the majority's reliance on § 108.7(c)(4) falls short under the most basic canons of statutory construction. The state's attorney conceded

as much at oral argument by declaring, "this [prosecution] isn't about voter fraud; this is just about fraud . . . if it were about voter fraud . . . we'd be in a better position because of 11 C.F.R. § 108.7(c)(4)."

By articulating a narrow exception to the preemptive reach of the FECA in § 108.7(c)(4), the FEC was merely acknowledging a long-standing constitutional dichotomy concerning which aspects of federal elections the states may regulate. As the Supreme Court explained, states have no inherent authority to regulate elections to federal office. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 803–04 (1995). The Elections Clause of Article I delegates *some* powers to the states, but only to regulate the "Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. art. I, § 1, cl. 1. This grant of authority to prescribe the mechanisms for holding congressional elections "encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Cook v. Gralike*, 531 U.S. 510, 523–24 (2001) (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)). In short, states are delegated the authority to promulgate "procedural regulations," such as the time and place of elections and the prevention of fraud and corruption *in the voting process itself*. *See id.* at 523. The states have no authority to regulate federal elections more broadly, even under statutes of general applicability.

11 C.F.R. § 108.7(c)(4) recognizes this dichotomy and nothing more. Under "the commonsense canon" of *noscitur a sociis*, "a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Thus, the term "voting fraud," which is sandwiched between the terms "false registration" and "theft of ballots," pertains only to fraud *in the process of voting*—not fraud more generally. Likewise, the catch-all phrase "similar offenses" means only similar offenses with respect to the process of voting—not all other offenses relating to federal elections. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 114–15 (2001) ("[Under] the maxim *ejusdem generis* . . . [w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (citation and internal quotation marks omitted)). Dewald's

prosecutions did not involve voting fraud. Accordingly, 11 C.F.R. § 108.7(c)(4)—which the Michigan Court of Appeals did not even cite—cannot serve as the basis for saving the court's otherwise unreasonable application of clearly established federal law.

**B. The State Court Failed to Consider an "As Applied" Preemption Argument**

Dewald has consistently argued that even though the State prosecuted him under laws of general applicability, the conduct for which he was convicted was expressly governed by the FECA and its accompanying regulations. He therefore maintains that federal law preempted his prosecutions. The Michigan Court of Appeals failed to consider Dewald's "as applied" preemption argument. Instead, the state court affirmed his convictions by summarily concluding that the state statutes under which he was convicted "are not specifically preempted by 2 USC 453." *Dewald*, 705 N.W.2d at 376. This failure to consider Dewald's "as applied" argument further demonstrates that the state court unreasonably applied clearly established federal law.

As the magistrate judge properly concluded, by prosecuting Dewald for the allegedly unlawful use of a candidate's name and the conversion of other committees' donor lists, "the Michigan Attorney General intruded into territory directly covered by the FECA and its regulations." *Dewald*, 2012 WL 3206021, at *16–17 (citing various statutory and regulatory provisions governing the precise conduct at issue in Dewald's prosecutions, including 2 U.S.C. §§ 432(b)(4), 441d(a)(3), and 438(a)(4) as well as 11 C.F.R. §§ 102.14(a), 110.11, and 104.15)). Where, as here, Congress expressly preempts state regulation in a particular domain, prosecutions under state law are prohibited. *See Nat'l Meat Ass'n v. Harris*, 132 S. Ct. 965, 970 (2012) (holding that express preemption clause in the Federal Meat Inspection Act preempts California penal code provision on the slaughter of hogs); *see also Pennsylvania v. Nelson*, 350 U.S. 497, 500–02 (1956) (prohibiting prosecutions under the Pennsylvania Sedition Act due to federal preemption). This is so regardless of whether the state laws at issue are consistent with the federal objective. *See Morales*, 504 U.S. at 387; *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 830 (1988). The FECA and its accompanying regulations preempted Dewald's prosecutions under the Michigan statutes "as applied," and the state court's refusal even to consider this argument further underscores the unreasonableness of its decision.

## C.  The State Court Improperly Applied the Presumption Against Preemption

Finally, the Michigan Court of Appeals improperly applied the general presumption against preemption.  Because the power to regulate federal elections never inhered in the states as a general police power, *Gralike*, 531 U.S. at 522–23, the state court should not have applied the presumption against preemption to the facts of this case, *see Locke*, 529 U.S. at 107–08. Accordingly, the state court yet again unreasonably applied clearly established federal law in affirming Dewald's convictions.

## IV.  CONCLUSION

Jerome Dewald may not be the most sympathetic habeas petitioner ever to appear before this court.  He swindled hundreds of thousands of dollars out of his fellow citizens, all in the name of personal financial gain.  Nevertheless, by enacting the FECA, Congress made a clear determination that the decision to prosecute him for these particular offenses was left to the federal government and the federal government alone.  The State of Michigan impermissibly intruded into this precisely drawn, integrated system of federal enforcement procedures.  As such, the FECA preempted Dewald's state prosecutions, and as described above, the Michigan Court of Appeals's determination to the contrary was unreasonable under clearly established federal law.  "Fairminded jurists" could not disagree.  *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  For these reasons, I would affirm the district court's grant of habeas corpus relief.